UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONSTANTINA DELGADO CRUZ,<br><br>Petitioner,<br><br>v.<br><br>TROY A. MILLER, United States Customs and Border Protection Commissioner, JASON OWENS, United States Border Patrol Chief, LLOYD EASTERLING, Chief Patrol Agent, Spokane Sector for the United States Border Patrol, PAUL BUDROW, Sheriff, Okanogan County Sheriff's Office Corrections Division, and PATRICK LECHLEITNER, United States Immigration and Customers Enforcement Acting Director,<br><br>Respondents. | CASE NO. 2:24-cv-1502<br><br>ORDER DENYING PETITIONER'S MOTION FOR A TRO |

## 1. INTRODUCTION

Petitioner Constantina Delgado Cruz is a foreign national currently detained at the Northwest ICE Processing Center in Tacoma, Washington. She alleges Customs and Border Protection ("CBP") agents violated the Fourth Amendment and 8 C.F.R. § 287.8 by stopping her without reasonable suspicion that she was engaged

ORDER DENYING PETITIONER'S MOTION FOR A TRO - 1

in unlawful activity. Before the Court is Delgado Cruz's motion for a temporary restraining order ("TRO") seeking immediate release from detention because of CBP's alleged constitutional and regulatory violation. For the reasons stated below, the Court DENIES her motion for a TRO.

## 2. FINDINGS OF FACT

Considering the parties' briefing, supporting exhibits, oral argument, and the record, the Court finds the following:[1]

Delgado Cruz is a native of Mexico. Dkt. No. 1 ¶ 4. She first entered the United States in 2003. Dkt. No. 6 at 6 ¶ 2. She remained in this country until 2009, when she traveled to Mexico to care for her dying mother. *Id.* ¶ 3. Delgado Cruz tried to return to the United States to reunite with her children after her mother's passing, but United States immigration officials and Federal Marshals apprehended her at the border. *Id.* ¶¶ 4, 5. "This encounter resulted in [Delgado Cruz's] removal, federal misdemeanor charges for illegal entry, and fraud . . . in connection with identification documents, as well as a twenty-year bar from reentry into the United States." *Id.* ¶ 5.

In October 2009, Delgado Cruz reentered the United States and has lived here continuously for the last fifteen years. *Id.* ¶ 6. Delgado Cruz resides in Oroville, Washington, and has significant family ties in the United States, including five children all of whom reside here under lawful status. Dkt. No. 1 ¶¶ 24, 28.

---

[1] Findings of fact and conclusions of law made in connection with a temporary restraining order are not binding adjudications. *Hordphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). The Court may come to different, perhaps even opposite, conclusions as the case advances.

ORDER DENYING PETITIONER'S MOTION FOR A TRO - 2

Delgado Cruz also serves as the primary caregiver to her three young grandchildren. Dkt. No. 6 at 6 ¶ 8. In the months to come, Delgado Cruz is expecting the birth of her fourth grandchild. *Id.* For the last four years, Delgado Cruz has been in a committed relationship with her boyfriend, who lawfully resides in the United States under an H-2A visa. *Id.* ¶ 9.

On September 17, 2024, Allen Cherry, Border Patrol Agent-Intelligence, was parked off Highway 97 near Oroville. Dkt. No. 10 at 1. At 3:45 p.m., Cherry saw a black Dodge Charger drive north past him and turn into a nearby residential neighborhood. *Id.* Cherry states that he recognized the Dodge Charger "as a vehicle of interest from previous intelligence gathering operations" and identified the license plate. *Id.* at 1-2. Cherry "conducted [a] records check" on his phone and discovered the vehicle was registered to Delgado-Cruz. *Id.* Cherry then found "a final order of removal from the United States" but "no records indicating that [Delgado Cruz] has legal status in the United States." *Id.* at 2. He also found Delgado Cruz was convicted of illegal entry under 8 U.S.C. § 1325. *Id.*

Cherry followed Delgado Cruz as she parked in a back alley of the neighborhood. *Id.* Cherry states he was able to positively identify the driver as Delgado Cruz when she exited the car to grab bags from her trunk. *Id.* He then contacted Aaron Steffen, Border Patrol Agent. *Id.*

Cherry watched Delgado Cruz reenter her car, leave the back alley, and continue south on Highway 97. *Id.* Cherry followed Delgado Cruz in his unmarked vehicle. *Id.* Once Steffen caught up to Cherry, Cherry pulled over onto the shoulder and entered Steffen's marked patrol car. *Id.* Steffen and Cherry pulled Delgado

Cruz over near Dwinell Cut Off road on Highway 97 at around 4:02 p.m. *Id.* at 3; Dkt. No. 11 at 2.

Steffen says he spoke to Delgado Cruz and asked her whether "she was illegally present in the United States." Dkt. No. 11 at 2. Steffen says that she responded "yes," after which he placed Delgado Cruz under arrest and transported her to the Oroville CBP Station. *Id.*; Dkt. No. 6 at 6 ¶ 15.

Delgado Cruz describes their encounter differently. She says CBP agents requested her driver's license and informed her they had a warrant for her arrest. Dkt. No. 6 at 7 ¶ 13. When Delgado Cruz asked why they stopped her, CBP officers told her it was due to "family ties and connections." *Id.* ¶ 14. After being fingerprinted and questioned, CBP held Delgado Cruz at the station until midnight on September 18, 2024. *Id.* ¶¶ 15-16. CBP transferred Delgado Cruz to the Okanogan County Corrections Center where she remained until her transfer to the Northwest ICE Processing Center in Tacoma, Washington on September 19, 2024. *Id.* ¶ 16.

Delgado Cruz remains detained at the Northwest ICE Processing Center, under Immigration and Nationality ACT (INA) § 241(a)(5), Dkt. No. 9 ¶ 4, which provides: "If . . . [an individual] has reentered the United States illegally after having been removed . . . , the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, . . . and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231. Delgado Cruz expressed fear about returning to Mexico because of her siblings' involvement with the local cartel. Dkt. No. 6 at 7 ¶ 15. On October 1, 2024, Delgado

ORDER DENYING PETITIONER'S MOTION FOR A TRO - 4

Cruz had a "credible fear interview" with U.S. Citizenship and Immigration Services under 8 C.F.R. § 208.31. Neither party has informed the Court of the outcome of that interview.

### 3. CONCLUSIONS OF LAW

**3.1    Legal standard.**

Preliminary injunctions and TROs are "extraordinary remed[ies] that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis added). "The default rule is that a plaintiff seeking a preliminary injunction must make a clear showing that '[they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024) (quoting *Winter,* 555 U.S. at 20). This four-part test—the *Winter* factors—applies whenever preliminary injunctive relief is sought. *Winter,* 555 U.S. at 20.

Injunctive relief can take two forms: prohibitory and mandatory. "A prohibitory injunction prohibits a party from taking action" while "[a] mandatory injunction orders a responsible party to take action." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) (internal quotation marks omitted). The parties agree Delgado Cruz seeks a mandatory injunction, and therefore, "she must establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (emphasis in original)*; see also Hernandez v. Sessions*,

872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals*, 571 F.3d at 879) ("Mandatory injunctions, while subject to a higher standard than prohibitory injunctions, are permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'").

The first *Winter* factor, "[l]ikelihood of success on the merits[,] is the most important factor[.]" *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019). In the Ninth Circuit, courts apply a "sliding scale approach" under which "a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation omitted). Under what is sometimes called the "serious questions" test, "[an] injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *Id.* (internal quotation marks omitted). "Serious questions are substantial, difficult and doubtful," requiring further deliberation and investigation, but that cannot be resolved at the time an injunction is sought. *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). In those cases, a TRO may issue to preserve the status quo or to order other injunctive relief. *See id.*; *see also Xuyue Zhang v. Barr*, 612 F. Supp. 3d 1005, 1012 (C.D. Cal. 2020); *Bent v. Barr*, 445 F. Supp. 3d 408, 416 (N.D. Cal. 2020).

**3.2   Delgado Cruz has not made a clear showing of a likelihood of success on the merits.**

Delgado Cruz alleges CBP violated the Fourth Amendment and 8 C.F.R. § 287.8 by stopping her without a reasonable suspicion that she was engaged in criminal wrongdoing.[2] "'The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest.'" *United States v. Willis*, 431 F.3d 709, 714 (9th Cir. 2005) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). "Such investigatory stops are justified by 'reasonable suspicion' that criminal activity may be afoot." *Id.* Reasonable suspicion is formed by "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Lopez-Soto,* 205 F.3d 1101, 1105 (9th Cir. 2000). 8 C.F.R. § 287.8(b) offers "at least as much protection as the Fourth Amendment" in that it requires immigration officials to have a "reasonable suspicion" before a detention. *Perez Cruz v. Barr*, 926 F.3d 1128, 1137 (9th Cir. 2019). The government has the burden of production of coming forward with "specific and articulable facts" to support reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Willis*, 431 F.3d at 715 n.5 ("the officer has satisfied the government's burden of production by

---

[2] Delgado Cruz conceded at oral argument that once stopped, the officers had probable cause to arrest her once she was positively identified and admitted that she was in the country unlawfully. Thus, the only governing law that guides the Court's merits inquiry relates to "reasonable suspicion."

ORDER DENYING PETITIONER'S MOTION FOR A TRO - 7

coming forward with 'specific and articulable facts,' … to support his suspicion of illegal activity.").

Here, the Government has proffered declarations with specific and articulable facts that show at least a minimal level of objective justification for stopping Delgado Cruz. Thus, setting aside matters of credibility, there is evidence from which to conclude that the CBP officers had a reasonable suspicion that Delgado Cruz was in the United States unlawfully and to stop her.[3] Delgado Cruz tries to poke holes in the officers' factual account, arguing that Cherry's claim of recognizing "a vehicle of interest from previous intelligence gathering operations" "is so vague as to be completely meaningless" and "[t]here are reasons to doubt that a 'positive identification' from an unknown distance and presumably using a photograph taken approximately 15 years prior constitute reasonable suspicion[.]" Dkt. No. 12 at 9-10. She also argues that the Government's supporting declarations make no mention of the "family ties and connections" justification an officer told Delgado Cruz, nor do they explain why "[t]he mere existence of [Delgado Cruz's] prior removal order" establishes articulable evidence of unlawful activity. *Id.* Delgado Cruz also questions the ability of the agents to perform a thorough records check within 17 minutes while driving behind her. *Id.* at 8.

To be sure, these are legitimate questions about the legality of the stop, and they call for further exploration and scrutiny. But they are not so substantial,

---

[3] It does not matter whether Delgado Cruz's detention is considered under 8 C.F.R. § 287.8 or under the Fourth Amendment, because the regulatory standards are at least as stringent as those imposed by the Fourth Amendment. *Perez Cruz*, 926 F.3d at 1137.

ORDER DENYING PETITIONER'S MOTION FOR A TRO - 8

difficult, and doubtful as to raise "serious questions" going to the merits of her Fourth Amendment claim or to tip the scales in favor of her immediate release from detention. And with no contrary evidence showing, for example, that CBP's so-called "intelligence gathering operation" was ill-investigated, uninformed, contrary-to-statute, or that her arrest was somehow retaliatory, Delgado relies on skepticism and speculation to carry the day. If that's all it took, however, to merit injunctive relief, courts would be rendered more "spectator[s] than … referee[s] when it comes to matters of equity." *Starbucks*, 144 S.Ct. at 1578. To the extent there are factual conflicts between Delgado Cruz's and the CBP officers' declaration, they only create more doubt about the probability of her success. *See id.* (citing 11A C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. § 2948.3 (3d ed. 2013)).

Accordingly, the Court finds that Delgado Cruz has not satisfied the "threshold inquiry" of likely success on the merits.[4] Because she has failed to meet the first *Winter* factor, the Court need not consider the remaining factors. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)).

---

[4] Delgado Cruz confirmed during oral argument that she does not presently allege that CBP racially profiled her or that CBP's stated reasons for stopping her are a pretext for discrimination. This is significant because the Fourth Amendment outlaws the pernicious practice of stopping and questioning people about their citizenship and immigration status when the *only* ground for suspicion is racial profiling. *See United States v. Brignoni-Ponce,* 422 U.S. 873, 884-887 (1975); *see also United States v. Rodriguez,* 976 F.2d 592, 596 (9th Cir. 1992). This type of race-based policing is "repugnant under any circumstances" and an "egregious" violation of the Constitution and 8 C.F.R. § 287.8(b)(2). *Sanchez,* 904 F.3d at 656.

ORDER DENYING PETITIONER'S MOTION FOR A TRO - 9

### 3.3 Questions about the Court's continued jurisdiction also weigh against an injunction.

Having found that Delgado Cruz has failed to show a likelihood of success on the merits, the Court turns to a separate issue that weighs against an injunction and that may eventually divest the Court of jurisdiction.

Delgado Cruz requests her immediate release from detention, arguing that a stop that violates the Fourth Amendment "can completely invalidate removal proceedings, requiring termination." Dkt. No. 12 at 6 (citing *Sanchez*, 904 F.3d 643, 655 (9th Cir. 2018)). But it's not clear, and Delgado Cruz does not clarify, what "invalidating removal proceedings" means in this context.

If Delgado Cruz is challenging a reinstated removal order, the Court may not have jurisdiction over this matter. "The REAL ID Act 'expressly eliminated habeas review over all final orders of removal,' *A. Singh v. Gonzales,* 499 F.3d 969, 977 (9th Cir.2007), and provided that a petition for review in the court of appeals is the 'sole and exclusive means for judicial review of an order of removal,' 8 U.S.C. § 1252(a)(5)." *Singh v. Holder*, 638 F.3d 1196, 1210 (9th Cir. 2011), *abrogated on other grounds by Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

That said, Congress did not intend the REAL ID Act to "preclude habeas review over challenges to detention that are independent of challenges to removal orders." *Id.* at 1211. Without observing this limit to the REAL ID Act, federal courts would be barred from considering any constitutional claims arising during a stop or arrest simply because they are "tangentially related to the [government's] decision

to commence removal proceedings." *Gupta v. McGahey*, 737 F.3d 694, 699 (11th Cir. 2013).

Neither party addresses this point in their briefing. Given the Court's continuing obligation to affirm its own jurisdiction, Delgado Cruz fails to assure her petition stands alone even if, as a technical point, it does not directly challenge the validity of her reinstated removal order.

### 3.4   Delgado Cruz is not yet under immediate threat of removal.

Delgado Cruz argues that, absent a TRO, she may be removed "long before the merits of this case are otherwise reached, subjecting her to irreparable harm." Dkt. No. 12 at 11. But Delgado Cruz is seeking withholding of removal based on her fear of returning to Mexico. The Government has assured the Court that Delgado Cruz will not be removed while her claims are being considered. The Court orders the Government to provide Delgado Cruz and the Court at least 14 days' notice before the date set for Delgado Cruz's deportation so that she may seek further relief from this Court or the Ninth Circuit, if appropriate.

### 3.5   The Court grants Delgado Cruz leave to amend her petition.

The Government argues the Court should dismiss Delgado Cruz's habeas petition because she names the wrong defendant. In response, Delgado Cruz argues that her counsel could not identify her location at the time they filed her petition. As a result, the Court should grant Delgado Cruz leave to amend now that her location is settled. The Court agrees with Delgado Cruz and grants her leave to amend within 10 days of the date of this Order.

### 4. CONCLUSION

In sum, the Court DENIES Delgado's petition for a TRO and GRANTS her leave to amend her petition within 10 days of the date of this Order. The Court also ORDERS the Government to provide Delgado Cruz and the Court 14 days' notice before the date set for Delgado Cruz's deportation from this country.

Dated this 7th day of October, 2024.

Jamal N. Whitehead
United States District Judge

ORDER DENYING PETITIONER'S MOTION FOR A TRO - 12